# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **DYNAMIS ENERGY LLC d/b/a** | § | |
| **UNITED ENERGY SERVICES,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| | § | **CIVIL ACTION NO. _____** |
| **v.** | § | |
| | § | |
| **US ENERGY SOLUTIONS, INC. and** | § | |
| **SERGHEI BUSMACHIU,** | § | |
| | § | |
| **Defendants.** | § | |

## INDEX OF STATE COURT DOCUMENTS

| | | |
|---|---|---|
| 1. | 11/19/2019 | Plaintiff's Original Petition |
| 2. | 12/02/2019 | Plaintiff's Request for Service on Defendants |
| 3. | 12/05/2019 | Citation Issued for Serghei Busmachiu |
| 4. | 12/05/2019 | Citation Issued for US Energy Solutions |
| 5. | 12/16/2019 | Return of Service for Serghei Busmachiu |
| 6. | 12/16/2019 | Return of Service for US Energy Solutions |
| 7. | 01/07/2020 | Dismissal for Want of Prosecution |

1

FILED
DALLAS COUNTY
11/19/2019 4:32 PM
FELICIA PITRE
DISTRICT CLERK

Christi Underwood

CAUSE NO. DC-19-18533

| | | |
|---|---|---|
| DYNAMIS ENERGY LLC D/B/A UNITED ENERGY SERVICES, | § § § | IN THE DISTRICT COURT |
| PLAINTIFF, | § § § | |
| V. | § § | OF DALLAS COUNTY, TEXAS |
| US ENERGY SOLUTIONS, INC. AND SERGHEI BUSMACHIU, | § § § | |
| DEFENDANTS. | § | A-14 JUDICIAL DISTRICT |

**PLAINTIFF'S ORIGINAL PETITION AND APPLICATION FOR INJUNCTIVE RELIEF**

Plaintiff Dynamis Energy LLC d/b/a United Energy Services ("Plaintiff" or "UES") files this Original Petition and Application for Injunctive Relief against Defendants US Energy Solutions, Inc. ("US Energy Solutions") and Serghei Busmachiu ("Busmachiu") (collectively "Defendants").

## I. DISCOVERY CONTROL PLAN

1. Pursuant to TEXAS RULE OF CIVIL PROCEDURE 190.3, Plaintiff intends to conduct discovery under a Level 2 Discovery Control Plan.

## II. PARTIES

2. Plaintiff is a limited liability company that conducts business in Dallas County, Texas.

3. US Energy Solutions is a Pennsylvania corporation whose home office address is **1080 N. Delaware Avenue #511, Philadelphia, Pennsylvania 19125**. US Energy Solutions has engaged in business activities in Texas including, but not limited to, the transactions with Plaintiff giving rise to this suit. Pursuant to the agreement in issue, US Energy Solutions contractually agreed that "Any action or proceeding arising out of this Agreement will be litigated in courts located in the state of Texas." According to public corporate records

maintained by the Texas Secretary of State's office, US Energy Solutions has not registered to do business in Texas and does not maintain a designated agent for service of process in Texas. Accordingly, it may be served with process through the Texas Secretary of State pursuant to § 17.045(a) of the TEXAS CIVIL PRACTICE & REMEDIES CODE. A copy of the citation and petition may be forwarded to Defendant at the above-referenced home office address.

4.      Busmachiu is an individual believed to be residing in Philadelphia, Pennsylvania and may be found at his home office address at **1080 N. Delaware Avenue #511, Philadelphia, Pennsylvania 19125.** Busmachiu has engaged in business and intentional tortious conduct with foreseeable injurious effects in this state. Plaintiff's claims arise out of those transactions. Busmachiu does not maintain a regular place of business or a designated agent for service of process in Texas. Accordingly, he may be served with process through the Texas Secretary of State pursuant to § 17.044(b) of the TEXAS CIVIL PRACTICE & REMEDIES CODE.

### III.      JURISDICTION AND VENUE

5.      Subject matter jurisdiction over this case is proper because the amount in controversy exceeds the minimum jurisdictional limits of the Court. This Court has personal jurisdiction over Defendants pursuant to the agreement in issue, by which US Energy Solutions contractually consented to litigating in Texas courts for purposes of resolving any dispute, and because the claims asserted against Busmachiu are intertwined with, and dependent upon, the contract with US Energy Solutions – a company that Busmachiu owns, controls, and uses deceptively for his own personal benefit. Venue is proper in this district pursuant to TEX. CIV. PRAC. & REM. CODE § 15.002(a)(1).

6.      Plaintiff seeks estimated aggregate monetary relief of more than $200,000 but less than $1,000,000 (including damages of any kind, penalties, costs, expenses, pre-judgment

interest, and attorney fees). Plaintiff reserves the right to amend this pleading to seek other or additional relief as discovery progresses.

## IV.   FACTS

7.     Plaintiff is a marketing and sales company that works with businesses and consumers in Texas and other territories to lower their overall cost of energy and telecommunication services.

8.     US Energy Solutions is a corporation – on information and belief based on Busmachiu's conduct and representations and statements made by Busmachiu during the course of the parties' business relationship – is exclusively owned and controlled by Busmachiu. Busmachiu, through US Energy Solutions, provides or provided marketing and sales services on behalf of businesses such as Plaintiff.

9.     Plaintiff entered into a Direct Sales Agreement ("Agreement") with US Energy Solutions dated August 29, 2018. US Energy Solutions agreed to provide marketing and sales services on behalf of Plaintiff. Busmachiu personally negotiated and signed the Agreement for US Energy Solutions.

10.     The parties agreed that "Any action or proceeding arising out of this Agreement will be litigated in courts located in the state of Texas." Agreement at § 15.

11.     The Agreement requires US Energy Solutions:

  a.     to use best efforts to market and sell services on behalf of UES on a full-time basis in the Philadelphia, PA Territory;

  b.     to refrain from engaging in any business activities that conflict or interfere with US Energy Solutions' performance of its duties to UES;

  c.     to refrain from any activities competitive with or similar to UES' business or any product or service offered by UES; and

> d.    to promote and preserve the business and business opportunities of UES and the goodwill of its customers, clients, suppliers, and other business relationships.

Agreement at § 2.1.

12.    The Agreement further prohibits US Energy Solutions – and its affiliates, employees, and agents such as Busmachiu – during the Term of the Agreement *and for a period of one year after any termination*, from competing with UES; working directly for or on behalf of any UES supplier; soliciting any UES teams, contractors, or subcontractors to leave UES; or soliciting UES clients to purchase competitive services or products. Agreement at §§ 5.2 and 5.3.

13.    Defendants breached and tortuously interfered with the Agreement and with Plaintiff's existing contacts and business relationships by, among other things, directly competing with Plaintiff in violation of the non-competition and non-solicitation restrictions set out in Section 5 of the Agreement — restrictions which remain in place during and for one-year after any termination of the Agreement.  Further, Defendants are improperly using and disclosing Plaintiff's proprietary information to assist their competitive activities.

14.    US Energy Solutions failed to perform under the Agreement.

15.    Plaintiff performed, tendered performance of, or was excused from performing its contractual obligations.

16.    All conditions precedent to recovery sought herein have been met or have been waived by Defendants.

## V.    CAUSES OF ACTION

### BREACH OF CONTRACT

17.    Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

18.    By reason of the foregoing acts or omissions, US Energy Solutions breached the terms of its Agreement with Plaintiff. Plaintiff requests that the Court award its actual and

benefit of the bargain damages due to the breaches of the Agreements. As of the date of suit, Defendant's breaches have given rise to damages in an amount in excess of the minimum jurisdictional limits of this Court, plus pre-judgment interest, reasonable and necessary attorneys' fees, and costs of court, for which amount Plaintiff now sues US Energy Solutions.

### ALTER EGO / SECTION 21.223 TEXAS BUSINESS ORGANIZATIONS CODE

19.     Busmachiu used US Energy Solutions deceptively for purposes of the transactions with Plaintiff in issue for his own direct personal benefit, and therefore, is personally liable for US Energy Solutions' obligations arising out of the Agreement.

### TORTIOUS INTERFERENCE WITH EXISTING AND PROSPECTIVE CONTRACTS

20.     Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

21.     Plaintiff had existing contracts and prospective business relationships with US Energy Solutions as well as third-party sales agents, contractors, and existing and prospective customers. Defendants were actually and/or constructively aware of these contracts and relationships by virtue of their engagement with Plaintiff. By their wrongful conduct described above, Defendants willfully and intentionally and with malice interfered, without privilege or justification, with those contracts and relationships. As a direct and proximate result of Defendants' tortious interference, Plaintiff has suffered and is entitled to recover actual damages, together with described below pre- and post-judgment interest and costs of suit.

### UNFAIR COMPETITION

22.     Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

23.     Defendants misappropriated and misused Plaintiff's confidential information to compete with Plaintiff for their own economic benefit. Defendants' wrongful conduct is contrary to honest practices in commercial matters and constitutes unfair competition. As a direct and

proximate result of Defendants' unfair competition, Plaintiff has suffered the damages described herein.

## TEMPORARY INJUNCTION

24.     Plaintiff requests after notice and hearing a temporary injunction providing that Defendants, any affiliated persons or entities, and any third parties acting in concert with them or at their instruction or request, be restrained and enjoined during the pendency of this case from directly or indirectly (a) competing with UES; (b) working directly for or on behalf of any UES supplier; (c) soliciting any UES sales agents, teams, contractors, or subcontractors to terminate or alter their relationship or compete with UES; (d) soliciting UES clients to purchase competitive services or products; or (e) using, disclosing, transferring, concealing, manipulating or destroying any trade secrets or confidential and proprietary business information learned or taken from Plaintiff.

25.     If temporary injunctive relief is not granted, Plaintiff will continue to suffer immediate and irreparable harm for which there is no adequate remedy at law. In all probability, Defendants will continue to compete with Plaintiff unfairly, using its sales agents and confidential information, in direct violation of their legal duties to Plaintiff. There is a substantial likelihood that Plaintiff will prevail on the merits at trial. The requested injunctive relief is narrow in scope and will preserve the *status quo* until trial of this cause.

## PERMANENT INJUNCTION

26.     Plaintiff requests that, upon final trial of this cause, the Court enter a permanent injunction prohibiting Defendants or any related entity or anyone acting in concert with them or at their instruction or request from the conduct described in the prior section permanently (with regard to any use or disclosure of Plaintiff's confidential information) and for the contractually-

required one-year restricted non-competition and non-solicitation period. If a permanent injunction is not entered, Plaintiff will continue to suffer irreparable harm for which there is no adequate remedy at law. In all probability, Defendants will continue the wrongful course of conduct giving rise to the claims asserted herein. The requested injunction is reasonable in time and scope.

### PUNITIVE DAMAGES

27.     Defendants' wrongful conduct was intentional, malicious, unjustified and in blatant disregard of Plaintiff's rights. Defendants engaged in such conduct with the intent to injure Plaintiff and the conscious desire to profit at Plaintiff's expense and detriment. To punish such action and to deter others from similar wrongdoing, Defendants should be assessed punitive damages in an amount to be determined by the trier of fact.

### ATTORNEYS' FEES

28.     As a result of Defendants' wrongful conduct described above, Plaintiff was forced to retain the undersigned counsel in relation to this action. Pursuant to Section 10 of the Agreement and TEXAS CIVIL PRACTICE & REMEDIES CODE §§ 38.001, Plaintiff seeks an award of reasonable and necessary attorneys' fees and costs incurred through trial and appeal of this cause.

### VI.     PRAYER FOR RELIEF

For these reasons, Plaintiff asks the court to:

(i)     cite Defendants to appear and answer this suit;

(ii)    order Defendants to appear and show cause and, on such hearing, enter a temporary injunction against Defendants as described above; and

(iii)   on final trial of this cause, enter judgment in Plaintiff's favor and against Defendants, jointly and severally, for permanent injunctive relief, actual and punitive damages, attorneys' fees, pre- and post-judgment interest, costs of court and any other relief to which Plaintiff may be justly entitled.

Respectfully submitted,

*/s/ William D. Dunn*
William D. Dunn
State Bar No. 24002023
ddunn@dunnsheehan.com
Blake J. Brownshadel
State Bar No. 24073969
bbrownshadel@dunnsheehan.com
**DUNN SHEEHAN LLP**
3400 Carlisle Street, Suite 200
Dallas, Texas 75204
Phone: 214-866-0077
Fax: 214-866-0070

**ATTORNEYS FOR PLAINTIFF**

**DIRECT SALES AGREEMENT**

**BY AND BETWEEN**

**Dynamis Energy LLC dba United Energy Services**

**AND**

**COMPANY**

**US Energy Solutions, Inc.**

**EFFECTIVE DATE:**

Aug 29, 2018

**THIS DIRECT SALES AGREEMENT** (this "Agreement") made as of the ___Aug 29, 2018___ day of _____ ("Effective Date") by and between Dynamis **Energy LLC dba United Energy Services**, a Texas limited liability company ("Company") and **US Energy Solutions Inc.** a Philadelphia Corporation (limited liability company /corporation) ("Direct Seller"). Company and Direct Seller are hereinafter individually referred to as a "Party" and collectively as the "Parties."

RECITALS

**WHEREAS,** Company is in the business of electricity procurement and wishes to engage Direct Seller to generate qualified enrollments (the "Sales") for the program listed in Schedule A, as developed, administered, offered, and modified by Company in its discretion from time to time (the "Program"), to end-user commercial and residential customers ("Customer" or "Customers") in the non-exclusive territory designated by Company here;

**WHEREAS,** Direct Seller desires to market the Program, and to engage in the business of conducting service solicitations on a direct sales/marketing basis, generating qualified enrollments, and providing such other services as may be assigned to Direct Seller by Company during the Term (collectively, the "Services"), directly and through a network of sales representatives, including any sub-agents and their respective employees and sales representatives (collectively the "Network"); and

**WHEREAS,** Company desires to engage Direct Seller on an independent contract basis and allow it to provide the Services, and Direct Seller has agreed to provide the Services to generate sales for the Program, at all times subject to the terms and conditions contained in this Agreement.

AGREEMENT

**NOW THEREFORE,** in consideration of the premises, the mutual covenants and agreements contained herein and other good and valuable consideration, the receipt and sufficiency of which each Party hereby acknowledges, the Parties covenant, undertake and agree, each with the other, as follows:

1. **Relationship of Parties**

Company hereby authorizes Direct Seller on a non-exclusive basis to generate Sales for the Program through the Network within such parts of the geographic area serviced by Company set forth in Schedule B, as such geographic area may be expanded or modified from time-to-time by Company in its discretion (the "Territory").

    1.1 The Parties agree that their relationship is one of independent contracting parties and that this Agreement does not create a general agency, joint venture, employment relationship, partnership or franchise between them. No Party has the authority to make business decisions for, execute agreements for, or otherwise bind the other Party, to respond on the other Party's behalf or in any way represent itself as having decision making authority beyond the rights set forth herein, or to represent the other Party in any way without the Party's express prior written approval and authority. Direct Seller shall be an independent contractor for all purposes, including, without limitation, federal, state and local taxation. Direct Seller shall have full control of its activities and the right to exercise independent judgment as to the time, place, and manner of soliciting Sales and providing Services for the Program and otherwise carrying out the provisions of this Agreement, subject to applicable laws and regulations. Except as otherwise expressly provided herein, Direct Seller shall be solely responsible for all expenses or obligations incurred by Direct Seller or its Network in connection with performing its obligations hereunder and shall not incur any indebtedness on behalf of Company.

    1.2 Company expressly reserves the right, without obligation or liability to Direct Seller, to directly or indirectly market and sell the Program and any other products and services in the Territory, whether though Company's own stores or representatives or through others, including, but not limited to, other authorized representatives, dealers, resellers, distributors, agents, sub-agents, and retailers.

2. **Obligations of Direct Seller**

    2.1. During the Term of this Agreement, Direct Seller, directly and/or through the Network, shall use best efforts to market and sale Services on behalf of Company on a full-time basis in the Territory. Direct Seller shall at all times devote, and ensure that each member of its Network devotes, their respective full business time, attention, and efforts to such activities on behalf of Company and shall not / does not, directly or indirectly,

Initials_____   **Confidential and Proprietary**   2
/ B.S

engage in any other business activities that conflict or interfere with Direct Seller's / Network's performance of their respective duties under this Agreement, including but not limited to any activities competitive with or similar to Company's business or any product or service offered by Company. Direct Seller will ensure that it and its Network uses best efforts to (a) perform the Services in a professional and ethical manner consistent with the terms of this Agreement and applicable laws, rules and regulations; (b) preserve and protect Company's intellectual property, confidential and proprietary information and trade secrets; and (c) promote and preserve the business and business opportunities of the Company and the goodwill of its customers, clients, suppliers, and other business relationships.

2.2. Direct Seller shall inform the Network of all of the obligations and requirements imposed by Company and by this Agreement, and shall use best efforts to ensure that the Network complies with all such obligations and requirements. Direct Seller shall further use diligent efforts to (i) ensure that its Network and each member thereof complies with applicable laws and regulations and does not misrepresent the Program or otherwise modify or expand the claims, representations or warranties provided by Company in connection with the Program; (ii) ensure that the Network is provided with sufficient information and resources to fully educate the Network with the Services, Program, and the rates and promotions available to Company's prospects and customers; and (iii) cause the Network to provide professional and efficient service to the public and do nothing that would tend to discredit, disparage, or in any way reflect adversely upon Company.

2.3. Direct Seller shall strictly adhere to Company's branding requirements as appended to the Agreement or provided in writing by Company to Direct Seller from time to time.

3. **Obligations of Company**

3.1 Company will from time to time provide Direct Seller and the Network with such support services and updated Program information as may be determined by Company in its discretion, to enable Direct Seller and the Network to effectively, knowledgeably and professionally sell the Program and provide Services in the Territory. This information may include periodic updates regarding changes to the Program or the Territory.

3.2 Reports - Company will from time to time provide Direct Seller reports, schedules and support for the marketing of the Program and provision of Services in such detail and format, and at such frequency and at such times as Company may determine in its reasonable discretion. Such reports may include, without limitation, the following reports:

3.2.1 Periodic reports defining particulars of order status to include Sales that are pending and/or have been cancelled, including the reasons for any cancellation, if known to Company.

3.2.2 Direct Seller shall have the right, for a period of ten (10) business days from the date of any report of a rejection or cancellation of an order to appeal such finding to Company by submitting written reasons for its dispute. Company shall research the reasons for dispute and determine if the "Cancelled" or "Rejected" orders were cancelled correctly or incorrectly and report its findings to Direct Seller. If Company determines that any orders were cancelled incorrectly, Company will take reasonable corrective action, including payment of remuneration, if any, owed in connection with such orders pursuant to the terms of this Agreement.

3.3 Taxes - Company shall not have any responsibility for any and all taxes relating to Direct Seller's or its Network's participation in the Program including, but not limited to (i) Direct Seller's or Network's compensation or income under this Agreement; or (ii) Direct Seller's engagement or payment of compensation to employees, agents, or subcontractors, or the Network. Direct Seller acknowledges and agrees that, as an independent contractor, the Company will not withhold federal income taxes, social security, Medicare, or any other taxes from payments due hereunder. Direct Seller shall remain solely responsible for payment of all federal, state, and local taxes, and for filing of all required tax returns and reports. The Company shall issue a Form 1099 to Direct Seller reporting all compensation as income.

4. **Billing and Payment**

4.1 Company shall pay fees to Direct Seller in accordance with and pursuant to the plan attached as <u>Schedule A</u> to this Agreement. The fees earned by Direct Seller shall be based on Sales, and Company shall endeavor to

pay Direct Seller any compensation owed under this Agreement for properly documented Sales by Direct Seller within ten (10) business days after Company's actual receipt of payment from the energy provider for those Sales. Company will pay any payments due to Direct Seller electronically via ACH, *provided* Direct Seller provides Company with all pertinent banking information to facilitate electronic bank payment. Direct Seller may dispute, in writing, within ten (10) business days of receipt of a commission statement from Company, any payment documented on such statement. Direct Seller's failure to notify Company in writing within the 10-day period as to any disputed item shall constitute agreement to the validity of such payment. If the total or any part of the disputed fee are determined by both Parties to be incorrect: a) if the disputed fee has already been paid by the Company, then a new invoice will be generated within three (3) business days by Direct Seller reflecting the correct fee and the disputed fee amount will be credited to the Company's account via ACH; or if the disputed payment is not yet due, the Direct Seller will generate a new invoice within three (3) business days reflecting the corrected amount and said invoice will be due within two (2) business days of receipt by Company. If the total disputed fee is determined by both Parties to be correct: a) if the disputed fee has already been paid by the Company, then no action is necessary by either Party; or if the disputed payment is not yet due, the Company will pay the payment on the later of the due date or within ten (10) business days of resolution of the disputed amount.

**5.     Restrictive Covenants**

5.1  <u>**Relationship between Company and Direct Seller / Network.**</u> Direct Seller recognizes and agrees that its engagement by Company is one of the highest trust and confidence because of the following:

(a)     Company has made and will make a significant investment in engaging and preparing Direct Seller and its Network to market and sell the Program; will provide substantial resources that Direct Seller and Network will use; has at substantial cost and effort built an established supplier and client base and reputation upon and from which Direct Seller and Network will be relying and benefitting; and has invested significant resources in advertising the Company and Program and developing goodwill;

(b)     Direct Seller and Network will become familiar with proprietary information and aspects of the business of Company and its suppliers and clients during the period of Direct Seller's engagement with Company, which information Direct Seller/Network did not possess prior to engagement by Company; and certain information of which Direct Seller/Network will gain knowledge of is proprietary and confidential information which is of special and peculiar value to Company, which knowledge Direct Seller and Network did not and would not possess prior to engagement by Company; and if any such proprietary and confidential information were imparted to or became known by any person, irreparable hardship, loss, injury and damage would result to Company, the measurement of which would be difficult if not impossible to ascertain.

Direct Seller therefore agrees that it is necessary for Company to protect its business from such damage, and Direct Seller further agrees that the following covenants constitute a reasonable and appropriate means, consistent with the best interest of both Direct Seller and Company to protect Company against such damage and will be binding upon Direct Seller as provided in this Agreement.

5.2  <u>Non-Competition.</u> Direct Seller, on behalf of itself and its Network, affiliates, sub-agents, and their respective sales representatives, employees, contractors, and agents (collectively, the "Restricted Parties"), grants the following restrictive covenant ("Restrictive Covenant") to Company.

5.2.1   For a period of time beginning on the Effective Date and continuing for a period of one (1) calendar year after any termination of this Agreement ("**Restricted Period**"), the Restricted Parties covenant and agree that they will not, in or within 100 miles of the Territory ("**Restricted Area**") directly or indirectly compete with Company including, but not limited to, offering, promoting, marketing, or selling products or services that are competitive with or substantially similar to the Services or the Program, or to any other product or service that may be offered or provided by Company during the Restricted Period (collectively, the "**Restricted Activities**"). During the Restricted Period, the Restricted Parties will not engage in Restricted Activities in the Restricted Area directly or indirectly, whether as an individual, organization, corporate or business entity, partner, associate, contractor,

employee, sales representative, or as a stockholder, officer, director, member, manager, partner, affiliate, agent, or representative of any Person so engaged. Nor will the Restricted Parties in any capacity during the Restricted Period, own, manage, engage in, operate, control, work for, consult with, render services for, lend or license Restricted Parties' names or trademarks to, or otherwise participate in any business conducting Restricted Activities in the Restricted Area.

5.2.2    If a court should hold that the Restricted Period, Restricted Activities and/or the Restricted Area is unenforceable, then to the extent permitted by law the court may prescribe a duration for the Restricted Period and/or a radius or area for the Restricted Area that is reasonable and the parties agree to accept such determination subject to their rights of appeal. Nothing herein stated will be construed as prohibiting Purchaser from pursuing any other equitable remedy or remedies available for such breach or threatened breach, including recovery of damages from Seller or injunctive relief.

5.2.3    Should the Restricted Parties be in violation of this Restrictive Covenant then the Restricted Period will be extended for a period of time equal to the period during which said violation or violations occurred. If Purchaser seeks injunctive relief from said violation in court, then the running of the Restrictive Period will be suspended during the pendency of said proceeding, including all appeals by the Restricted Parties. This suspension will cease upon the entry of a final judgment in the matter.

5.3    Non-Solicitation. For purposes of this Section, **"Restricted Supplier"** means any and all energy, electricity or power suppliers, providers, wholesalers, manufacturers, or sellers with whom a Restricted Party works or maintains a relationship with in any capacity on behalf of Company or in connection with the Program or this Agreement. **"Restricted Client"** means any prospective or actual client or customer with whom a Restricted Party works or communicates or about whom a Restricted Party receives confidential information from Company in connection with this Agreement or the Program. During the Restricted Period, the Restricted Parties covenant and agree not to, directly or indirectly, on behalf of themselves or any other person or entity:

5.3.1    Accept employment from, work in any capacity for or on behalf of, or provide competitive services or assistance of any nature, to any Restricted Supplier, or solicit or induce, attempt to solicit or induce, or assist any Restricted Supplier to terminate or alter its relationship with Company, or to market or sell products or services outside of its relationship with Company in a manner that is competitive with Company;

5.3.2    solicit or induce, or attempt to solicit or induce any sales representative, employee, contractor, agent, or sub-agent engaged by Company, or engaged by Direct Seller to provide Services on behalf of Company, to discontinue providing Services or participating in the Program, or to terminate or alter their relationship with the Company; or

5.3.3    solicit or induce, or attempt to solicit or induce, any Restricted Client to purchase or acquire competitive goods or services; discontinue participating in the Program or acquiring Services; or otherwise terminate or alter their client relationship with Company.

5.3    Specific Performance. Any breach of the warranties and covenants contained in this Section 5 will be subject to specific performance by temporary as well as permanent injunction or other equitable remedies by a court of competent jurisdiction. The Parties acknowledge that damages at law may be an inadequate remedy. To the extent permitted by applicable law, the Parties agree that the appropriate amount for securing or posting of bond in connection with obtaining such injunctive or equitable relief is $100.00. The obtaining of any such injunction will not prevent the obtaining Party from also seeking and obtaining any damages incurred as a result of such breach, either prior to or after obtaining such injunction. If any court of competent jurisdiction determines that a Party has breached any of the foregoing covenants, then that Party will pay all reasonable costs of enforcement of the foregoing covenants including, but not limited to, court costs and reasonable attorneys' fees, including such costs and fees through any appeals.

**6.      Representations and Warranties**

6.1   Direct Seller hereby represents and warrants to Company as follows:

   6.1.1      Direct Seller is duly organized, validly existing and in good standing under the laws of the state of Pennsylvania;

   6.1.2      Direct Seller has all the requisite corporate power and authority to enter into this Agreement and to carry out and perform its obligations under the terms of this Agreement; and

   6.1.3      The execution, delivery and performance of and compliance with this Agreement does not and will not conflict with, violate, or constitute a default under any of Direct Seller's organizational documents or any other contract, agreement, instrument, order, statute, law, rule or regulation applicable to Direct Seller or Company in any territory or state where Direct Seller shall conduct business.

   6.1.4      This Agreement, when executed by Direct Seller, will constitute a legal, valid and binding obligation of Direct Seller enforceable against Direct Seller in accordance with its terms.

   6.1.5      Direct Seller shall obtain and maintain, at its own expense, all relevant permits, licenses and bonds required to furnish the Services.  Additionally, Direct Seller shall provide Company with copies of any such permits, licenses or bonds upon request.

   6.1.6      Direct Seller's policies and operating procedures shall comply with all federal, state and local laws, regulations and rules, applicable to Company and to the products and services to be sold by Direct Seller pursuant to this Agreement. These may include, without limitation and only to the extent applicable to the Services to be provided hereunder (i) the California Home Solicitation Sales law (Cal. Civ. Code § 1689.5 *et. seq.*) and similar laws of any other applicable state, (ii) the Federal Trade Commission's Telemarketing Sales Rules (16 C.F.R. Part 310), (iii) the Customer Proprietary Network Information rules contained in the Communication Act of 1934, as amended (47 U.S.C. § 222 and its implementing regulations, 47 C.F.R. § 64.2001 *et. seq.*), (iv) the privacy rules governing cable and high speed internet customers' information (47 U.S.C. § 551), and (v) any other laws, regulations and rules specific to the products and services to be sold by Direct Seller pursuant to this Agreement. Vendor shall, every thirty (30) calendar days, prior to calling any number on behalf of Company, Vendor shall verify each number to be called against the Federal and applicable State DNC Register as well as any internal do-not-call list maintained by Company and Vendor.

6.2   Company hereby represents and warrants to Direct Seller as follows:

   6.2.1      Company is duly organized, validly existing and in good standing under the laws of the state of Texas;

   6.2.2      Company has all the requisite corporate power and authority to enter into this Agreement and to carry out and perform its obligations under the terms of this Agreement;

   6.2.3      The execution, delivery and performance of and compliance with this Agreement does not and will not conflict with, or constitute a default under any of Company's organizational documents or any other contract, agreement, instrument, order, statute, rule or regulation applicable to Company;

**7.      Use of Company's Intellectual Property**

During the Term, Company grants to Direct Seller a limited, non-exclusive, revocable, royalty-free right and license to use and display Company's name and logo as depicted on the attached Schedule C, solely within the Territory and solely for generation of Sales for the Program, in accordance with Company's applicable guidelines that have been provided to Direct Seller.

For purposes of this <u>Section 7</u>, the term "Marks" shall mean Company's name and logo, and any and all trademarks, service marks, domain names, trade names, insignias, symbols, logos or decorative designs, which Company may authorize by license or sublicense for Direct Seller's use during the Term. All title to and the rights in the Marks and the associated goodwill are the exclusive property of Company. Direct Seller agrees that its use of the Marks will not create any right, title, or interest in or to such Marks other than as set forth in this Agreement, and that all goodwill associated with such Marks, including any goodwill generated through Direct Seller's use of the Marks, will belong and inure solely to the benefit of Company. Direct Seller covenants and agrees that it will not (1) take any action or assist any third party in any action to contest or impair Company's ownership rights or dilute, tarnish, or infringe the Marks; (2) at any time dispute or contest the right, title, or validity of the Marks; or attempt to register or use any intellectual property, including any trademarks or service marks, confusingly similar to Marks. Direct Seller acknowledges that it has no rights in the Marks except those expressly granted under this Agreement or in a subsequent written license agreement duly executed by Company; and that all other rights are reserved by Company. In using the Marks, Direct Seller will acknowledge Company's ownership of the applicable Marks, including properly marking any communications, marketing materials, products or services; will comply with all reasonable conditions set forth in writing from time to time by Company with respect to style, appearance, and manner of use of the Marks; and, prior to a new use of any of the Marks, will submit to Company for approval representative samples of all proposed materials bearing one or more of the Marks; and will cooperate in good faith with Company to correct and/or remedy inappropriate uses of the Marks. In connection with its use of any of the Marks, Direct Seller agrees to make proper use of the "®" symbol or other proper notice to indicate a federally registered mark, and the "™" symbol to indicate an unregistered mark. Upon receiving notice that the use of a registration notice or "™" symbol is incorrect or otherwise deemed unacceptable to Company, Direct Seller will promptly modify such uses to address Company's reasonable objections.

**8.   Confidential Information**

8.1   All proprietary technical, procedural, training, business, and Network information disclosed by one Party (the "<u>Disclosing Party</u>") to the other of them (the "<u>Receiving Party</u>") in the course of this Agreement in written or other tangible or electromagnetic form shall be the confidential information ("<u>Confidential Information</u>") of Disclosing Party and shall remain the property of Disclosing Party. In addition, if in the course of Direct Seller's performance of this Agreement, a Customer has applied for an Enrollment through Direct Seller, the fact that a Customer has applied for the program and the identity, nature and scope of the Enrollment ("<u>Application Information</u>") shall be the Confidential Information and property of Company. If in the course of Direct Seller's performance of this Agreement a contact or communication between Direct Seller and a Customer relates to the Enrollment, all of Customer's information obtained by Direct Seller in that contact or communication ("<u>Customer Supplied Information</u>") shall be the Confidential Information of Company and shall be the property of Company. Any Customer information produced, prepared, created, originated, developed, or acquired by Direct Seller under, or in connection with, the performance of this Agreement shall be the property of Company. Upon request by Company, Direct Seller shall disclose and return to Company any application information and Customer Supplied Information in Direct Seller's possession.

8.2   Receiving Party shall: (i) hold the Confidential Information of Disclosing Party in confidence; (ii) not disclose such Confidential Information to anyone other than its employees with a need to know; and (iii) use such Confidential Information solely in connection with the performance of this Agreement. Upon termination or expiration of this Agreement or upon written request of Disclosing Party, whichever occurs earlier, Receiving Party shall return or destroy (and certify such destruction in writing to Disclosing Party) all Confidential Information of Disclosing Party.

8.3   Notwithstanding the foregoing, the obligations imposed in Sections 8.1 and 8.2 above shall not apply to information which: (i) was known to the Receiving Party prior to disclosure in the course of this Agreement; (ii) except for Customer Supplied Information, is rightfully received by the Receiving Party from a third party without restriction; (iii) is independently developed by the Receiving Party; or (iv) is or becomes publicly available through no fault of the Receiving Party. The obligations imposed in Sections 6.1 and 6.2 above shall not apply to any Confidential Information to the extent such information is required to be disclosed by the Receiving Party pursuant to an order of a court or other governmental body (*provided* that the Receiving Party shall give, to the extent not prohibited by law, the Disclosing Party prompt notice of any such order).

8.4   The Parties acknowledge and confirm that they conduct public relations activities from time to time. Each of the Parties shall submit a written request outlining the use of the other Party's name and nature of services performed as reference in the proposed public relations material and shall not utilize any proposed public

relations material without the written consent of the other Party. Either Party, upon written notice, may revoke said authorization for use of its name, allowing for reasonable time to modify or change any publication or usage in collateral from the point in time authorization is revoked.

**9.   Term and Termination**

This Agreement shall be effective on the date first written above and, unless terminated by Company in accordance with the terms of this Agreement, shall remain in effect for 12 months thereafter (the "Term"). The Agreement shall be automatically renewed for a one-year period at the end of the term unless terminated in writing by a Party at least 90 days prior to the expiration of the then-current Term, or otherwise terminated in accordance with the next sentence. Except as may be contained otherwise herein, this Agreement may also be terminated as follows: (a) upon the mutual written agreement of the Parties at any time; (b) by either Party in the event of a material breach by the other Party of this Agreement that remains uncured thirty (30) days after the breaching Party's receipt of written notice of the breach; (c) by either Party if the other Party is unable to pay its debts as due, or enters into or files (or has filed or commenced against it) a petition, arrangement, action or other proceeding seeking relief or protection under the bankruptcy laws of the United States or similar laws of the United States or any state of the United States; or (d) by Company at any time upon 30 days' written notice to Direct Seller.

The termination or expiration of this Agreement shall not affect the obligations of either party to the other under existing orders issued under this Agreement prior to such termination or expiration. Following the termination of this Agreement for any reason, other than based on a breach of this Agreement or the willful misconduct of Direct Seller or its employees, the Company shall pay the Direct Seller according to the terms of Schedule A for Services rendered before the effective date of the termination. The Direct Seller acknowledges and agrees that no other compensation, of any nature or type, shall be payable hereunder following the termination of this Agreement, including residual payments.

**10.   Indemnification**

(a)      Direct Seller agrees for itself and its Network to take all necessary precautions to ensure compliance with applicable law and to prevent injury to any persons (including employees of Company) or damage to property (including Company's property) during the term of this Agreement, and shall indemnify, defend and hold harmless Company, its members, managers, officers, directors, shareholders, employees, representatives, insurers, attorneys, agents and assigns from any claim, liability, loss, cost, damage, fine, judgment, settlement or expense (including attorney's fees and expert witness costs) resulting from or arising in any way out of injury (including death) to any person; damage to property; or otherwise arising in any way out of (i) any breach of any term or condition of this Agreement by Direct Seller; or (ii) any negligent act, error, or omission by, or the willful misconduct of Direct Seller or any member of its Network.

(b)      Direct Seller further agrees to indemnify and hold Company harmless from and against any and all claims, demands, liabilities, damages, costs, or expenses (including without limitation attorney's fees, back wages, liquidated damages, penalties or interest) resulting from Direct Seller's failure to collect, withhold, or pay any and all federal or state taxes required to be withheld or paid by employers or employees, including, without limitation, any and all income tax, social security, and F.U.T.A. taxes.

**11.   Disclaimer of Warranties**

EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT, COMPANY EXPRESSLY DISCLAIMS ALL REPRESENTATIONS OR WARRANTIES OF ANY KIND, EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION THE WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE AND THOSE WARRANTIES WHICH ARISE FROM TRADE, CUSTOM OR USAGE, TO THE FULLEST EXTENT ALLOWED BY APPLICABLE LAW.

**12.   Notice**

12.1 Each Party shall promptly notify the other Party in writing upon discovering the occurrence of (i) any adverse claim or potential adverse claim related to the Services by any third party; (ii) any investigation by any governmental authority as it relates to the Services; or (iii) any suit or other legal action relating to the Services or that may impede a Party's ability to perform its obligations under this Agreement.

Initials_____ / _____   **Confidential and Proprietary**                                              8

12.2 All notices, waivers, and other communications required or permitted hereunder shall be in writing and shall be deemed to have been duly given when delivered by hand or dispatched (with reasonable evidence of receipt) by telex, telegraph, or other means of electronic facsimile transmission, or three (3) days after being sent by an internationally recognized overnight courier service, or five (5) days after being sent by prepaid registered post addressed to the Party to whom the notice is intended to be given at the addresses specified below:

| | |
|---|---|
| To Company: | **United Energy Services** |
| | 8763 SW 27th Ln, Suite 101 |
| | Gainesville, FL 32608 |
| To Direct Seller: | US Energy Solutions Inc |
| | Address     1080 N Delaware Ave #511Philadelphia, PA 19125 |
| | Address 2 |
| | Attention: |
| | Tel: |
| | Facsimile |

Or to such other address or addresses as either Party may from time to time designate by like notice.

**13.  Waiver, Modification, Cancellation**

Any waiver, alteration, or modification of any of the provisions of this Agreement, or its cancellation or replacement shall not be valid unless made in writing and signed by an authorized representative of Company and Direct Seller.  No delay or failure by Company or Direct Seller, as the case may be, in exercising any right under this Agreement, and no partial or single exercise of that right, shall constitute a waiver of that or any other right.

**14.  Insurance**

Direct Marketer will obtain and maintain, and require the Network to obtain and maintain, during the term of this Agreement the following types of insurance, in amounts not less than the following: (i) statutory worker's compensation and employer's liability in the amount of not less than $500,000 per occurrence; (ii) commercial general liability in the amount of not less than $1,000,000 combined single limit per occurrence; and (iii) commercial crime/fidelity insurance covering employee dishonesty in the amount of not less than $1,000,000 per loss.

**15.  Governing Law; Forum; Jury Waiver**

This Agreement will be governed by and construed in accordance with the laws of the state of Texas, without regard to conflict of laws principles thereof.   Any action or proceeding arising out of this Agreement will be litigated in courts located in the state of Texas.  Each Party consents and submits to the exclusive jurisdiction of any state or federal court located in Alachua County, Florida (or a federal court for the district encompassing such county).

**16.  Survival**

The Parties acknowledge and agree that the agreements, representations, warranties and indemnities contained in Sections 4, 5, 7, 9 – 14, 18 and 19 shall survive the termination of this Agreement.

**17.  Entire Agreement**

This Agreement, which incorporates and includes any attached Schedules, addenda and exhibits hereto, shall be binding upon and inure to the benefit of Company and Direct Seller, their respective legal representatives, successors, and permitted assigns. This Agreement contains the entire understanding between Company and Direct Seller with respect to the subject matter hereof, and supersedes all prior agreements and understandings, inducements, or conditions, express or implied, oral or written, except as herein contained.  The express terms hereof control and supersede any course of performance and/or usage of the trade inconsistent with any of the terms hereof.

**18. Assignment**

Neither Party may assign this Agreement without the prior written consent of the other, except to a person into which it has merged or which has otherwise succeeded to all or substantially all of such Party's business and assets to which this Agreement pertains and which has assumed in writing or by operation of law its obligations under this Agreement. Any attempted assignment in violation of the provisions of this provision will be void. Providing however, that Company hereby acknowledges and confirms that certain of the obligations to be performed by Direct Seller pursuant to this Agreement will be assigned to the Network from time to time as Direct Seller, in its discretion, may determine as defined above.

**19. Severability**

If any provision of this Agreement, or the application thereof to any person or circumstance, shall be held invalid or unenforceable under any applicable law, such invalidity or unenforceability shall not affect any other provision of this Agreement that can be given effect without the invalid or unenforceable provision, or the application of such provision to other persons or circumstances, and, to this end, the provisions hereof are severable.  In the event that a court of competent jurisdiction determines by final judgment that the scope, time period, or geographical limitations of the covenants set forth herein are too broad to be capable of enforcement, said court is authorized to modify said covenants and enforce such provisions as to scope, time, and geographical area as the court deems equitable.

**20. Counterparts; Facsimile Signatures**

This Agreement may be signed in counterparts, each of which will be considered an original and all of which together will constitute one and the same agreement. Facsimile transmission of any signed original document will be the same as delivery of an original.

*[Signature Page Follows]*

**IN WITNESS WHEREOF,** the Parties have executed this Agreement this _Aug 29, 2018_ day of _____ 2018.

**Dynamis Energy, LLC dba United Energy Services**

By:_____

Name:_____

Title:_____

**US Energy Solutions Inc.**

By:_____

Name: _Serghei_____

Title: _CEO/OWBER_____

[Signature Page to Direct Sales Agreement]

Confidential and Proprietary

**SCHEDULE A**

**Compensation Rate- Residential**

Product Sales that are accepted or deemed accepted by Company shall be compensated as follows:

**Single sale** - $70 total payout
**Dual Sale** - $115 total payout

Up front payment shall be made the week following Provider's receipt and acceptance of the New Customer's Contract, after Provider pays Company.  For instance, any accepted deals sold from June 13th (Monday) – June 19th (Sunday) would pay out on June 24th (the next Friday).

**Residential Clawback**
In the event that a residential New Customer Contract is cancelled or terminated within 30 days of the utility acceptance date for a New Customer Contract, Company reserves the right to claw back the entire commission paid for such New Customer Contract.  If Company seeks a claw back, Direct Seller. agrees to reimburse or offset the amount sought within 14 days of the request less any amounts owed by Company to Direct Seller.

At any time, Sales generated by Direct Seller that are alleged to be fraudulent or deceptive will be removed from invoice and such commission payments shall not be due with respect to such Sales (or will be refunded, as applicable) not matter the time that has passed since such fraudulent sale.

For any new offices that stem from the organic promotion or direct relationship from Direct Seller, Direct Seller will receive 4% of the total sales commission, excluding bonuses or incentives, from such office.  After four such offices are derived from Direct Seller, in addition to Direct Seller's immediate office, Direct Seller will receive 5% of the total sales commission, excluding bonuses or incentives, from such offices on a weekly basis.  If the total office count falls below four, excluding Direct Seller's immediate office, the overrides will revert back to 4%.

**SCHEDULE B**
**Non-Exclusive Territory/Market Assignments**

**Residential:**
Philadelphia, PA
Other pre-approved areas throughout the US

**SCHEDULE C**
**Trademarks**



**Residual Addendum**

Once an office hits 600 accepted accounts in a calendar month (based on 12 calendar months- beginning on the 1st and ending the last day of the month), they will be eligible to start to accrue and receive residual commissions of $0.0005 per kwh for each electric account that's signed up, stays with Constellation and pays their monthly bill (on time).

Any office owner who personally promotes a 1st generation office or is responsible for bringing on a new office and those offices hit the minimum threshold will receive $0.0005 per kwh for each electric account that is signed up by the particular office (accredited to them), stays with Constellation and pays their monthly bill (on time). It's up to UES, in conjunction with others, who is credited/paid for bringing on a new office.

If an office doesn't hit 600 accepted accounts (400 for any owner open as of 5/1/2017) in a calendar month, residual commissions will be suspended until the minimum threshold is met. Residuals that were to be paid during that time will be lost but will commence after the office hits the 600 (400 for those "grandfathered" as of 5/1/2017) accepted deals in a calendar month.  Both the office owner and the promoting owner who's receiving overrides, where applicable, will be subject to this clause and will lose the residual pay on the corresponding office until the minimum thresholds are met.

Any residual revenues are solely for accepted electric accounts.; not gas. However, both fuels count towards the minimum threshold of 600 accepted accounts closed during a calendar month from an office. Residual revenues will be paid out once per month.

Residual revenues are for the life of a customer's account with Constellation, so long as  1) customer remains in good standing (current with payment) and on flow 2) office hits the minimum threshold of 600 accepted accounts closed the previous calendar month. If a customer doesn't pay, UES isn't paid, so the residual wouldn't be paid either.

Residual pay comes around 90 days after an accepted electric account is sold (the customer has to change to Constellation, receive service for 30 days and then pay their bill in full) and the revenue stream is designed to build over time as more accounts are added and paid on assuming minimum thresholds are met the previous calendar month.

Residual revenues will remain in place as long as the customer is current and on flow with Constellation and the owner is exclusively a part of the UES sales network. If an owner leaves the UES sales network, they are due no further residual revenues/payouts.

This is all subject to change upon UES notification. Residual payments cease if this agreement is breached by a particular office/owner or Constellation takes it away from UES. This agreement is separate from other agreements previously signed and agreed to between the independently owned sales company (office) and/or office owner and UES.

**<u>Financial Release</u>**

Direct Seller granst Company the right to receive and review all corporate documents from the listed company weekly/monthly. These required financial documents will be sent to <u>financialreporting@unitedenergyservices.com</u> by COB each Thursday for the previous week's financials.

- Weekly Profit and loss statement
- Year to date statement
- Balance sheet
- Weekly cash report
- Monthly business bank statements, checking and or savings
- Current certificates of coverage for general liability and workers compensation with $1 million minimum policies

By my initials below, I attest to the accuracy of the information contained in the above-listed financial information, and represent and warrant to UES that all information provided pursuant to this agreement shall fairly and accurately present the financial condition and results of operations and cash flow of operation of the Company as of the dates and for such periods listed on such documents.

The owner is required to update UES with the current contact information on the person or company responsible for reporting the above documents. The provider is authorized to answer questions by UES representative related to information provided on above documents. Questions can include but are not limited to payroll details, confirmation of corporate tax filings and payment, changes in financial situation and payments to or from shared office tenants and users.

**2**

FILED
DALLAS COUNTY
12/2/2019 4:14 PM
FELICIA PITRE
DISTRICT CLERK

Kayla Buckley

# DUNN | SHEEHAN LLP

3400 Carlisle St., Ste. 200
Dallas, Texas 75204
214.855.0077
214.866.0070 fax

Michelle Yelle
myelle@dunnsheehan.com

December 2, 2019

Dallas County District Clerk                                    ***Via Electronic Filing***
George Allen Courts Building
600 Commerce Street, Suite 103
Dallas, Texas 75202

> Re:   *Dynamis Energy LLC d/b/a United Energy Services, Inc. v. US Energy Solutions, Inc. and Serghei Busmachiu* Cause No. DC-19-18533, 14th Judicial District Court, Dallas County, Texas

Dear Clerk,

On November 19, 2019, we filed Plaintiff's Original Petition in the above-referenced matter. We are requesting citations be issued for service on the following:

Defendant US Energy Solutions, Inc.
1080 N. Delaware Avenue #511
Philadelphia, Pennsylvania 19125

and

Defendant Serghei Busmachiu
1080 N. Delaware Avenue #511
Philadelphia, Pennsylvania 19125

Please let me know if you have any questions. Thank you for your assistance.

Very truly yours,

*/s/ Michelle Yelle*
Michelle Yelle
Litigation Paralegal

**3**

# FORM NO. 353-3 - CITATION
# THE STATE OF TEXAS

**To: SERGHEI BUSMACHIU**
    **1080 N DELAWARE AVE #511**
    **PHILADELPHIA PA  19125**

GREETINGS:
You have been sued.  You may employ an attorney.  If you or your attorney do not file a written
Answer with the clerk who issued this citation by 10 o'clock a.m. of the Monday next following the
expiration of twenty   days after you were served this citation and **petition**, a default judgment may be
taken against you.  Your answer should be addressed to the clerk of the **14th District Court** at 600
Commerce Street, Ste. 101, Dallas, Texas 75202.

Said Plaintiff being **DYNAMIS ENERGY LLC**

Filed in said Court  **19th day of November, 2019** against

**US ENERGY SOLUTIONS INC AND SERGHEI BUSMACHIU**

For Suit, said suit being numbered <u>**DC-19-18533,**</u> the nature of which demand is as follows:
Suit on **CNTR CNSMR COM DEBT** etc. as shown on said petition, a copy of which accompanies this
citation.  If this citation is not served, it shall be returned unexecuted.

WITNESS: FELICIA PITRE, Clerk of the District Courts of Dallas, County Texas.
Given under my hand and the Seal of said Court at office this 5th day of December, 2019.

ATTEST: FELICIA PITRE, Clerk of the District Courts of Dallas, County, Texas

By_____, Deputy
    CARLENIA BOULIGNY

---

**ESERVE**

**CITATION**

**DC-19-18533**

**DYNAMIS ENERGY LLC**
**Vs.**
**US ENERGY SOLUTIONS INC, et al**

ISSUED THIS
**5th day of December, 2019**

FELICIA PITRE
Clerk District Courts,
Dallas County, Texas

By:  CARLENIA BOULIGNY, Deputy
_____
**Attorney for Plaintiff**
WILLIAM DAVID DUNN
DUNN SHEEHAN LLP
3400 CARLISLE STREET
SUITE 200
DALLAS TX  75204
214-866-0077
**ddunn@dunnsheehan.com**

**DALLAS COUNTY**
**SERVICE FEES**
**NOT PAID**

# OFFICER'S RETURN

Case No. :  DC-19-18533

Court No.14th District Court

Style: DYNAMIS ENERGY LLC

 Vs.

US ENERGY SOLUTIONS INC, et al

Came to hand on the _____ day of _____, 20_____, at _____ o'clock _____.M. Executed at _____, within the County of _____ at _____ o'clock _____ .M. on the _____ day of_____, 20_____, by delivering to the within named _____

_____

Each, in person, a true copy of this Citation together with the accompanying copy of this pleading, having first endorsed on same date of delivery.  The distance actually traveled by me in serving such process was _____miles and my fees are as follows:   To certify which witness my hand.

For serving Citation   $_____          _____

For mileage          $_____          of _____County, _____

For Notary           $_____          by _____Deputy

(Must be verified if served outside the State of Texas.)

Signed and sworn to by the said _____before me this _____day of _____,

20_____, to certify which witness my hand and seal of office.

_____

Notary Public _____County_____

**4**

# FORM NO.  353-3 - CITATION
# THE STATE OF TEXAS

**To: US ENERGY SOLUTIONS INC**
**1080 N DELAWARE AVE #511**
**PHILADELPHIA PA  19125**

GREETINGS:
You have been sued.  You may employ an attorney.  If you or your attorney do not file a written
Answer with the clerk who issued this citation by 10 o'clock a.m. of the Monday next following the
expiration of twenty   days after you were served this citation and **petition**, a default judgment may be
taken against you.  Your answer should be addressed to the clerk of the **14th District Court** at 600
Commerce Street, Ste. 101, Dallas, Texas 75202.

Said Plaintiff being **DYNAMIS ENERGY LLC**

Filed in said Court  **19th day of November, 2019** against

**US ENERGY SOLUTIONS INC AND SERGHEI BUSMACHIU**

For Suit, said suit being numbered **DC-19-18533,** the nature of which demand is as follows:
Suit on **CNTR CNSMR COM DEBT** etc. as shown on said petition, a copy of which accompanies this
citation.  If this citation is not served, it shall be returned unexecuted.

WITNESS: FELICIA PITRE, Clerk of the District Courts of Dallas, County Texas.
Given under my hand and the Seal of said Court at office this 5th day of December, 2019.

ATTEST: FELICIA PITRE, Clerk of the District Courts of Dallas, County, Texas

By_____, Deputy
    CARLENIA BOULIGNY

---

**ESERVE**

**CITATION**

**DC-19-18533**

**DYNAMIS ENERGY LLC**
**Vs.**
**US ENERGY SOLUTIONS INC, et al**

ISSUED THIS
**5th day of December, 2019**

FELICIA PITRE
Clerk District Courts,
Dallas County, Texas

By:  CARLENIA BOULIGNY, Deputy
_____
**Attorney for Plaintiff**
WILLIAM DAVID DUNN
DUNN SHEEHAN LLP
3400 CARLISLE STREET
SUITE 200
DALLAS TX  75204
214-866-0077
**ddunn@dunnsheehan.com**



**DALLAS COUNTY**
**SERVICE FEES**
**NOT PAID**

## OFFICER'S RETURN

Case No. :  DC-19-18533

Court No.14th District Court

Style: DYNAMIS ENERGY LLC

 Vs.

US ENERGY SOLUTIONS INC, et al

Came to hand on the _____day of _____, 20_____, at _____o'clock _____.M. Executed

at _____, within the County of _____ at _____ o'clock _____ .M.

on the _____day of_____, 20_____, by delivering to the within

named _____

_____

Each, in person, a true copy of this Citation together with the accompanying copy of this pleading, having first endorsed on same date of delivery.  The distance actually traveled by me in serving such process was _____miles and my fees are as follows:   To certify which witness my hand.

| | | |
|---|---|---|
| For serving Citation | $_____ | _____ |
| For mileage | $_____ | of _____County, _____ |
| For Notary | $_____ | by _____Deputy |

(Must be verified if served outside the State of Texas.)

Signed and sworn to by the said _____before me this _____day of _____,

20_____, to certify which witness my hand and seal of office.

_____

Notary Public _____County_____

**5**

FILED
DALLAS COUNTY
12/16/2019 10:37 AM
FELICIA PITRE
DISTRICT CLERK

Felicia Pitre

# FORM NO. 353-3 - CITATION
# THE STATE OF TEXAS

**To: SERGHEI BUSMACHIU**
    **1080 N DELAWARE AVE #511**
    **PHILADELPHIA PA 19125**

GREETINGS:
You have been sued. You may employ an attorney. If you or your attorney do not file a written Answer with the clerk who issued this citation by 10 o'clock a.m. of the Monday next following the expiration of twenty   days after you were served this citation and **petition**, a default judgment may be taken against you. Your answer should be addressed to the clerk of the **14th District Court** at 600 Commerce Street, Ste. 101, Dallas, Texas 75202.

Said Plaintiff being **DYNAMIS ENERGY LLC**

Filed in said Court **19th day of November, 2019** against

**US ENERGY SOLUTIONS INC AND SERGHEI BUSMACHIU**

For Suit, said suit being numbered **DC-19-18533,** the nature of which demand is as follows:
Suit on **CNTR CNSMR COM DEBT** etc. as shown on said petition, a copy of which accompanies this citation. If this citation is not served, it shall be returned unexecuted.

WITNESS: FELICIA PITRE, Clerk of the District Courts of Dallas, County Texas.
Given under my hand and the Seal of said Court at office this 5th day of December, 2019.

ATTEST: FELICIA PITRE, Clerk of the District Courts of Dallas, County, Texas

By_____, Deputy
     CARLENIA BOULIGNY



## See Attached
## Declaration

---

**ESERVE**

**CITATION**

**DC-19-18533**

**DYNAMIS ENERGY LLC**
**Vs.**
**US ENERGY SOLUTIONS INC, et al**

ISSUED THIS
**5th day of December, 2019**

FELICIA PITRE
Clerk District Courts,
Dallas County, Texas

By: CARLENIA BOULIGNY, Deputy

**Attorney for Plaintiff**
**WILLIAM DAVID DUNN**
**DUNN SHEEHAN LLP**
**3400 CARLISLE STREET**
**SUITE 200**
**DALLAS TX 75204**
**214-866-0077**
**ddunn@dunnsheehan.com**

**DALLAS COUNTY**
**SERVICE FEES**
**NOT PAID**

## RETURN OF SERVICE

**State of Texas**                    **County of Dallam**                    **14th District Court**

Case Number: DC-19-18533

Plaintiff:
**DYNAMIS ENERGY LLC**

vs.

Defendant:
**US ENERGY SOLUTIONS INC, et al.**

For:
William David Dunn
Dunn Sheehan, LLP
3400 Carlisle Street
Ste. 200
Dallas, TX 75204

Received by Travis Wyatt on the 10th day of December, 2019 at 12:48 pm to be served on **SERGHEI BUSMACHIU**.

I, Travis Wyatt, do hereby affirm that on the **11th day of December, 2019** at **10:56 am, I:**

delivered two true and correct copies of this **CITATION, with attached PLAINTIFF'S ORIGINAL PETITION AND APPLICATION FOR INJUNCTIVE RELIEF,** after endorsing the date of delivery thereon, to **SERGHEI BUSMACHIU,** by delivering to the **Texas Secretary of State - Citations Unit**. Accepted by **Michelle Robinson**, Citation Unit Clerk, in person, at: **1019 Brazos Street, Room 106, Austin, Travis County, TX 78701.** An administrative fee of $55 was also tendered.

My name is Travis Wyatt, my date of birth is 10/20/1971, and my address is 1 Chisholm Trail, Ste. 450, Round Rock, TX 78681, USA. I declare under penalty of perjury that the foregoing is true and correct. Executed in Williamson County, State of Texas, on the 12'ᵗ day of December, 2019.

**Travis Wyatt**
PSC-4959/Exp. 3/31/20

**Falcon Document Solutions**
**301 Commerce Street**
**Suite 240**
**Fort Worth, TX 76102**
**(817) 509-6127**

Our Job Serial Number: WYT-2019000949

Copyright © 1992-2019 Database Services, Inc. - Process Server's Toolbox V8 1g

**6**

FILED
DALLAS COUNTY
12/16/2019 10:37 AM
FELICIA PITRE
DISTRICT CLERK

Felicia Pitre

# FORM NO. 353-3 - CITATION
# THE STATE OF TEXAS

**To: US ENERGY SOLUTIONS INC**
  **1080 N DELAWARE AVE #511**
  **PHILADELPHIA PA  19125**

GREETINGS:
You have been sued.  You may employ an attorney.  If you or your attorney do not file a written
Answer with the clerk who issued this citation by 10 o'clock a.m. of the Monday next following the
expiration of twenty   days after you were served this citation and **petition**, a default judgment may be
taken against you.  Your answer should be addressed to the clerk of the **14th District Court** at 600
Commerce Street, Ste. 101, Dallas, Texas 75202.

Said Plaintiff being **DYNAMIS ENERGY LLC**

Filed in said Court  **19th day of November, 2019** against

**US ENERGY SOLUTIONS INC AND SERGHEI BUSMACHIU**

For Suit, said suit being numbered <u>**DC-19-18533,**</u> the nature of which demand is as follows:
Suit on **CNTR CNSMR COM DEBT** etc. as shown on said petition, a copy of which accompanies this
citation.  If this citation is not served, it shall be returned unexecuted.

WITNESS: FELICIA PITRE, Clerk of the District Courts of Dallas, County Texas.
Given under my hand and the Seal of said Court at office this 5th day of December, 2019.

ATTEST: FELICIA PITRE, Clerk of the District Courts of Dallas, County, Texas

By_____, Deputy
        CARLENIA BOULIGNY



## See Attached
## Declaration

**ESERVE**

**CITATION**

**DC-19-18533**

**DYNAMIS ENERGY LLC**
**Vs.**
**US ENERGY SOLUTIONS INC, et al**

ISSUED THIS
**5th day of December, 2019**

FELICIA PITRE
Clerk District Courts,
Dallas County, Texas

By:  CARLENIA BOULIGNY, Deputy

**Attorney for Plaintiff**
WILLIAM DAVID DUNN
DUNN SHEEHAN LLP
3400 CARLISLE STREET
SUITE 200
DALLAS TX  75204
214-866-0077
**ddunn@dunnsheehan.com**

**DALLAS COUNTY**
**SERVICE FEES**
**NOT PAID**

## RETURN OF SERVICE

**State of Texas**                    **County of Dallam**                    **14th District Court**

Case Number: DC-19-18533

Plaintiff:
**DYNAMIS ENERGY LLC**

vs.

Defendant:
**US ENERGY SOLUTIONS INC, et al.**

For:
William David Dunn
Dunn Sheehan, LLP
3400 Carlisle Street
Ste. 200
Dallas, TX 75204

Received by Travis Wyatt on the 10th day of December, 2019 at 12:48 pm to be served on **US ENERGY SOLUTIONS INC**.

I, Travis Wyatt, do hereby affirm that on the **11th day of December, 2019** at **10:56 am, I:**

delivered two true and correct copies of this **CITATION, with attached PLAINTIFF'S ORIGINAL PETITION AND APPLICATION FOR INJUNCTIVE RELIEF,** after endorsing the date of delivery thereon, to **US ENERGY SOLUTIONS INC,** by delivering to the **Texas Secretary of State - Citations Unit**. Accepted by **Michelle Robinson**, Citation Unit Clerk, in person, at: **1019 Brazos Street, Room 106, Austin, Travis County, TX 78701.** An administrative fee of $55 was also tendered.

My name is Travis Wyatt, my date of birth is 10/20/1971, and my address is 1 Chisholm Trail, Ste. 450, Round Rock, TX 78681, USA. I declare under penalty of perjury that the foregoing is true and correct. Executed in Williamson County, State of Texas, on the _12th_ day of _December_, _2019_.

Travis Wyatt
PSC-4959 Exp. 3/31/20

**Falcon Document Solutions**
**301 Commerce Street**
**Suite 240**
**Fort Worth, TX 76102**
**(817) 509-6127**

Our Job Serial Number: WYT-2019000948

Copyright © 1992-2019 Database Services, Inc. - Process Server's Toolbox V8.1g

7



14TH JUDICIAL DISTRICT COURT
GEORGE L. ALLEN COURTS BUILDING
600 COMMERCE STREET
DALLAS, TEXAS 75202-4604

January 07, 2020

File Copy

DC-19-18533
DYNAMIS ENERGY LLC  vs.  US ENERGY SOLUTIONS INC, et al

ALL COUNSEL OF RECORD AND PRO SE PARTIES:

The above case is set for dismissal, pursuant to Rule 165A, Texas Rules of Civil procedure and pursuant to the inherent power of the Court, on:

**February 14, 2020 at 11:00 AM**

If no answer has been filed you are expected to have moved for a default judgment on or prior to that date. Your failure to have done so will result in the dismissal of the case on the above date.

If you have been unable to obtain service of process and you wish to retain the case on the docket, you must appear on the above date, unless you have obtained a new setting from the court coordinator.

Sincerely,

ERIC V. MOYÉ, DISTRICT JUDGE
14TH DISTRICT COURT
Dallas County, Texas

Cc:
 WILLIAM DAVID DUNN
 3400 CARLISLE STREET
 SUITE 200
 DALLAS TX 75204